UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KAMERON LEE FLANIGAN,

Petitioner,

v.

JOE WOODLAND,

Respondent.

Case No. 2:25-cv-00905-AB

OPINION AND ORDER

Kameron Lee Flanigan
22210780
Snake River Correctional Institution
Prisoner E-Filer
777 Stanton Blvd
Ontario, OR 97914-8335

Petitioner, *Pro Se*

Daniel T. Toulson
Oregon Department of Justice
1162 Court Street, NE
Salem, OR 97301-4096

Attorney for Respondent

## INTRODUCTION

Petitioner, an individual in custody at Snake River Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition (ECF No. 1) is denied.

## BACKGROUND

### I. Criminal Proceedings

The following factual summary is from the general judgment issued by the state post-conviction ("PCR") court:

> In Marion County case number 19CR83473, petitioner was charged with two counts of Burglary in the First Degree with a Firearm, two counts of Robbery in the First Degree with a Firearm, one count of Felon in Possession of a Firearm, and one count of Giving False Information to a Peace Officer. The charges in case 19CR83473 arose from petitioner's participation in a home invasion robbery.
>
> Late in the night on December 25, 2019, the victims Orion Chase and Summer Holmes were at home in Mr. Chase's mobile home trailer. Mr. Chase noticed a Toyota Tundra truck parked outside with two unknown men inside. Mr. Chase went out to ask the men if they needed anything. They told him that they wanted to buy some cocaine. Mr. Chase then told the men they were in the wrong place and that no one around there sold drugs, however the men responded "well, [we're] going to wait." Mr. Chase then returned to his home.
>
> About five to ten minutes later, Mr. Chase notice[d] the men were still there. He went back out and told the men that they might want to leave because the police patrol the area regularly. The men thanked him but remained. About five minutes later, Mr. Chase saw the Toyota Tundra driving away very slowly.
>
> About five to ten minutes after that, the same two men walked into Mr. Chase's home "like they owned it." The first man had a large caliber Glock handgun with an extended magazine in it. The man took turns pointing the gun a[t] Mr. Chase and Ms. Holmes. The men demanded that Mr. Chase and Ms. Holmes give them all the drugs and money, and that they empty their pockets. Despite protests that there were no drugs in the house, the men continued to demand drugs. At one point the man with the handgun stated "Don't make me make this a double homicide."
>
> After a while, the man with the gun saw a rifle that belonged to Mr. Chase's roommate, Corey Rogers who was away visiting family for the holiday. The man with the pistol picked up the rifle and started pointing it at the victims.

The men then ordered the victims to stand up off the couch. Mr. Chase used the opportunity to run out of the trailer to get help from a neighbor who had a very aggressive dog. At that point the men fled, taking the rifle and Ms. Holmes' two cell phones that had been plugged in next to the door. Mr. Chase then called the police.

When the police arrived, both Mr. Chase and Ms. Holmes gave the following descriptions of the two men. The man with the handgun was "a white male adult in his twenties, with a red beard wearing [an] all black hoodie." Ms. Holmes added to the description that he "had big eyes, appeared high and his jaw moved weird when he talked." She added that he was wearing "medium-washed" jeans. Mr. Chase stated the man with the gun was the passenger in the Toyota Tundra.

Both Mr. Chase and Ms. Holmes described the other man as "a white male in his twenties, 5-08/Skinny, with dirty blonde hair wearing a blue bandana over his face, a green hoodie and blue eyes." His jeans were "light-washed" and "he was wearing dark, clunky skater type shoes." Mr. Chase identified him as the driver of the Toyota Tundra.

While the police were interviewing the victims, other officers worked to apprehend the perpetrators. After an unsuccessful pursuit, a Toyota Tundra matching [the] description given by the victims was found parked in a residential driveway. A rifle matching the one taken from the victims was found in the back seat. Officers detained petitioner in the area. Petitioner was wearing black pants, and a black hoodie. He had a black Glock 9mm handgun with an extended magazine, and an identification card belonging to Steven Kizer. Petitioner also had two cell phones which were later identified as belonging to Ms. Holmes. When asked about the cell phones petitioner said he got them from "Tweakers."

Throughout his questioning with police, officers repeatedly referred to petitioner as Mr. Kizer and petitioner did not tell police that he was not Stephen Kizer. Only after police informed him that they would be taking him to jail did he inform police of his real name.

After petitioner was detained, a picture of petitioner was texted to the officer interviewing the victims and the officer explained what happened next in his report:

> While speaking to Orion and Summer, a picture had been sent out of a male which had been contacted shortly after the pursuit and a K-9 Track. Orion and Summer were standing next to me as I opened up the picture. Both of them exclaimed, "That's him." They advised the male in the picture is the one which had come into the RV with the handgun and stolen the rifle. I advised the other units at the other scenes of the positive identification.

> Based on the above, petitioner was charged with two counts of Burglary in the First Degree with a Firearm, two counts of Robbery in the First Degree with a Firearm, one count of Felon in Possession of a Firearm, and one count of Giving False Information to a Peace Officer in case 19CR83473.
>
> At the time of his arrest, petitioner had multiple other criminal cases pending against him in Marion County. In case 18CR16121 petitioner was charged with one count of misdemeanor Theft in the Second Degree, and two counts of misdemeanor Criminal Trespass in Second Degree. In case 18CR40884 petitioner was charged with two counts of misdemeanor Disorderly Conduct in the Second Degree, one count of misdemeanor Criminal Mischief in the Third Degree, and one count of misdemeanor Resisting Arrest. In case 19CR75385 petitioner was charged with one count of felony Unauthorized Use of a Vehicle. In 19CR77794, petitioner was charged with one count of misdemeanor Giving False Information to an Officer.
>
> Petitioner was also on probation from cases in Douglas and Polk Counties. In [the] Douglas County case 18CR46623 petitioner was convicted of one count of felony Unauthorized Use of a Vehicle, one count of Felony Fleeing or Attempting to Elude a Police Officer, one count of misdemeanor Recklessly Endangering Another Person, and one count of misdemeanor Unlawful Possession of a Firearm. Petitioner was sentenced to probation and serving that probation sentence at the time of the December 25 robbery. Petitioner had multiple previous probation violations and was facing the possibility of revocation in 18CR46623. Petitioner was also on probation in Polk County case 18CR16853. In that case petitioner was convicted of one count of misdemeanor Unlawful Possession of a Firearm. Petitioner had previous probation violations in that case.
>
> Attorney Martin Habekost was appointed to represent petitioner. On July 16, 2020, a settlement conference was held in petitioner's cases. The settlement conference resulted in a global resolution of all of petitioner's criminal cases.

Resp't Ex. 129 at 1-3 (ECF No. 21-1).

At Petitioner's change of plea hearing, the trial court conducted a colloquy in which Petitioner affirmed that he understood the rights he was foregoing as part of agreeing to plead guilty, including his right to a jury trial, his right to "challenge the State's witnesses and their evidence," his right to testify and other rights outlined in the plea petition. Resp't Ex. 105 at 6-8. Petitioner confirmed the allegations in the indictment related to the charges he was pleading guilty to were true, and pled guilty to those charges. *Id.* at 8-10. The criminal court accepted the guilty

pleas, *id*. at 8-10, finding that they were all "freely and voluntarily given after advice of rights by counsel," *id.* at 10.

Following the agreement by the parties, the trial court sentenced Petitioner to 162 months in prison in case number 19CR83473, dismissing multiple charges pursuant to the plea agreement. Resp't Ex. 105 at 19-26. The court also dismissed the charges in Petitioner's other pending cases, revoked Petitioner's probation in the Douglas County and Polk County cases, and ran the sentences on the probation revocations concurrent to the sentence in case number 19CR83473. *Id.*

Petitioner filed a direct appeal challenging the structure of his sentence. Resp't Ex. 107 at 8-11. The Oregon Court of Appeals affirmed without opinion, Resp't Ex. 111, and the Oregon Supreme Court denied review, Resp't Ex. 110.

**II. Post-Conviction Proceedings**

Petitioner next filed for post-conviction relief. *See* Resp't Exs. 114, 115. Appointed counsel filed an Amended Petition raising a claim of ineffective assistance of counsel:

> Ineffective Assistance of Counsel/Not Knowing, Voluntary, and Intelligent Pleas— Failure to Discuss Possibility of Excluding Identification

Resp't Ex. 115 at 5. Included in this claim was a second, latent claim that Petitioner's plea was "not knowing, voluntary, and intelligent" because of trial counsel's alleged ineffectiveness. *Id.* at 7; *see also* Resp't Exs. 116 at 1 (asserting in trial memorandum that Petitioner "raises a single bifurcated claim arguing both ineffective assistance of counsel and that Petitioner did not make a knowing, voluntary, and intelligent decision" to waive his rights); 128 at 11 (PCR counsel making similar statement at hearing).

Petitioner briefly testified at the PCR hearing. Resp't Ex. 128 at 8-11. The PCR court made credibility findings, including that Petitioner was not credible, and denied relief in a written opinion. *See* Resp't Ex. 129.

Petitioner appealed the PCR court's denial of his claim. Resp't Ex. 131. The state moved for summary affirmance, arguing that the PCR court's finding that Petitioner's testimony was not credible foreclosed review on appeal. Resp't Ex. 132. The Court of Appeals granted the motion and summarily affirmed the PCR court's judgment. Resp't Ex. 134. The Oregon Supreme Court denied review. Resp't Ex. 136.

## III. Federal Habeas Corpus

On May 27, 2025, Petitioner filed a *pro se* habeas corpus petition in this Court. Petitioner asserts two grounds for relief:

> **A. Ground One:**
> (i) Denial of effective assistance of counsel at trial or appeal.
>
> **Supporting FACTS (state *briefly* without citing cases or law):**
> A criminal defendant is entitled to the adequate and effective assistance of counsel under Article I, section 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments of the United States Constitution.
>
> "A criminal defense attorney is ineffective and inadequate if…
> (1) He fails to exercise reasonable professional skill and judgment, and
> (2) That failure prejudices the defendant…"
>
> **B. Ground Two:**
> (a) Conviction obtained by plea of guilty that was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
>
> **Supporting FACTS (state *briefly* without citing cases or law):**
> I pursued (PCR) post-conviction relief declaring, "*inter alia*…"
> "That my trial counsel was ineffective for failing to advise me that motion could be filed to suppress the witness identifications and therefore…
> My plea was not knowing, intelligent and voluntary…"
>
> Therefore under Article I, section 11, of the Oregon Constitution and the Sixth and Fourteenth Amendment of the United States Constitution were breached…

Pet. at 5 (ECF No. 1).

Respondent urges this Court to deny habeas relief, arguing that Petitioner fails to state a claim upon which relief can be granted, or that, to the extent that the Petition presents a federal ineffective assistance of counsel claim, any such claim is procedurally defaulted or was denied in a state-court decision that is entitled to deference. *See* Resp. (ECF No. 19). Although Petitioner's supporting memorandum was due on January 26, 2026, he has not filed any such brief.

## DISCUSSION

### I. Failure to State a Claim

Respondent argues the Petition should be dismissed for failure to present an issue in compliance with the Rules Governing Section 2254 Case. Resp. at 9-11. Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts requires that a petition "must: (1) specify all the grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground." Rather than dismiss the Petition for failure to comply with Rule 2(c), the Court will liberally construe the *pro se* Petition to state viable grounds for relief for pleading purposes.

### II. The Petition

Liberally construed, Petitioner alleges that trial counsel was ineffective for failing to file a motion to suppress the identifications made by the victims. *See* Pet. at 5.[1] Petitioner raised this claim in his PCR proceedings. Respondent, however, argues that Petitioner's claim is procedurally defaulted because he declined to raise any federal issue before the Oregon Supreme Court in his Petition for Review. Resp. at 11-13. In the alternative, Respondent argues that to the extent that

---

[1] Petitioner appears to also argue that, because trial counsel failed to advise him such a motion could be filed, his plea was not knowing, intelligent and voluntary. Pet. at 5. Respondent correctly points out that Petitioner's claim that his plea was not knowing, voluntary and intelligent because of trial counsel's alleged ineffectiveness is properly addressed solely as an ineffective assistance of counsel claim. Resp. at 5, n.1.

the Petition states a federal ineffective assistance of counsel claim, the state court decision denying such a claim was not objectively unreasonable. *Id*. at 13-18.

*A. Exhaustion and Procedural Default*

i. Legal Standards

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915–916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)). If a petitioner failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

ii. Relevant State Court Proceedings

In his PCR proceedings, Petitioner raised a "single bifurcated claim for relief arguing both ineffective assistance of counsel and that petitioner did not make a knowing, voluntary, and intelligent decision to waive his state and federal constitutional rights to a trial by jury." Resp't Ex. 116 at 1. After a hearing, at which Petitioner testified, the PCR court found Petitioner to be not credible and denied relief in a written opinion. *See* Resp't Exs. 128, 129.

Petitioner appealed, assigning error to the PCR court's denial of his claim. Resp't Ex. 131. The state moved for summary affirmance, arguing that the PCR court's credibility finding foreclosed review on appeal:

> Petitioner correctly acknowledges that, to establish prejudice based on a claim that counsel gave inadequate advice before a plea, he was required to show that he would have insisted on going to trial if not for counsel's alleged deficiency. (App Br 12, 19 (citing *Moen v. Peterson*, 312 Or 503, 513, 824 P2d 404 (1991))). He also acknowledges that the post-conviction court expressly found him not credible on that point. (App Br 19). That finding is dispositive. *See Newmann v. Highberger*, 330 Or App 229, 234, 543 P3d 172, *rev den*, 372 Or 588 (2024) (post-conviction court's finding that petitioner was not credible in stating that he "would have gone to trial" but for counsel's alleged inadequacy "binds us on appeal and precludes the conclusion that petitioner was prejudiced by the alleged deficiency in counsel's advice"); *Blain v. Cain*, 327 Or App 584, 588, 536 P3d 623 (2023), *rev den*, 372 Or 22 (2024) (reaching a similar conclusion).

Resp't Ex. 132 at 3.

The Court of Appeals agreed with the state's argument and summarily affirmed the PCR judgment:

> The court determines that, for the reasons articulated in the superintendent's motion, petitioner's brief does not present a substantial question of law regarding whether the post-conviction court erred in denying post-conviction relief, in view of *Newmann v. Highberger*, 330 Or App 229, 234, 543 P3d 172, *rev den*, 372 Or 588 (2024). Therefore, the motion is granted.

Resp't Ex. 134.

Petitioner sought review, asking the Oregon Supreme Court to "clarify the prejudice standard under Article I, section 11, of the Oregon Constitution for ineffective-assistance-of-counsel claims arising from guilty pleas." Resp't Ex. 135 at 5. Petitioner presented two questions of law:

> <u>First Question Presented</u>
> What is the standard for prejudice for claims of ineffective assistance of counsel under Article I, section 11 of the Oregon Constitution when the postconviction petitioner pleaded guilty to the conviction challenged in post-conviction relief?

> Second Question of Law
> Did petitioner submit a substantial question of law, such that the Court of Appeals erred in summarily affirming petitioner's convictions?

*Id*. at 8. Petitioner argued that the Court of Appeals applied the incorrect standard of prejudice:

> This court has previously suggested that a petitioner must establish an "actual probability" rather than a "reasonable probability" when the petitioner pleaded guilty instead of proceeding to trial. *See Green v. Franke*, 357 Or 301, 323 n 13, 350 P3d 188 (2015) ("[W]here the prejudice inquiry focuses on a different type of outcome, for example, whether in the absence of inadequate assistance of counsel the petitioner would have entered a guilty plea, this court has described the tendency to affect the outcome test in terms of actual probability."); *Moen v. Peterson*, 312 Or 503, 513, 824 P2d 404 (1991) (holding that, "to prevail in this case, [the] petitioner must show by a preponderance of the evidence that, had counsel informed him of the possibility of a minimum sentence, or had he otherwise been aware of it, he would not have pleaded no contest."). Yet this court has also reiterated in multiple cases that the prejudice standards under Article I, section 11, and the Sixth Amendment are "functionally equivalent." *See, e.g., Johnson v. Premo*, 361 Or 688, 699, 399 P3d 431, 438 (2017) (quoting *Montez v. Czerniak*, 355 Or 1, 6-7, 322 P3d 487 (2014)). And the United States Supreme Court has made clear that the prejudice standard under the Sixth Amendment in the guilty plea context is the same as when the petitioner went to trial. *Lee v. United States*, 582 US 357, 137 S Ct 1958, 1964, 198 L Ed 2d 476 (2017). Under the Sixth Amendment, the prejudice standard is whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland v. Washington*, 466 US 668, 694, 104 S Ct 2052, 80 L Ed 2d 674 (1984)).
>
> In this case, the Court of Appeals' grant of summary affirmance was based on an incorrect standard of prejudice. The prejudice standard as articulated in *Lee* and *Strickland* required a legal determination of whether there was a reasonable probability that, but for counsel's inadequate advice, petitioner would have chosen to plead guilty. The post-conviction court's finding regarding petitioner's credibility was relevant to, but not decisive of, the prejudice issue.

*Id*. at 9-10. The "Argument" section of the Petition for Review included the following statement: "Petitioner also relies on the arguments presented in his briefing before the Court of Appeals. *Farmer v. Baldwin*, 346 Or 67, 73-74, 205 P3d 817 (2009)." *Id*. at 11. The Oregon Supreme Court denied review. Resp't Ex. 136.

/ / /

iii. Analysis

On this record, the Court finds that Petitioner fairly presented the instant federal ineffective assistance of counsel claim to the Oregon Supreme Court in a manner in which it could be and was in fact considered on the merits.

*B. The Merits*

i. Legal Standards

1. Deference to State-Court Decisions

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id.* at 410.

When applying these standards, the federal court should review the "last reasoned decision" by a state court that addressed the issue. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

2. Ineffective Assistance of Counsel

The Sixth Amendment provides defendants with the right to assistance of counsel in all criminal prosecutions, which implies the right to effective assistance of counsel. *Missouri v. Frye*, 566 U.S. 134, 138 (2012). The "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Id.* at 140 (quoting *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)).

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel. First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 686–687. Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id.* at 689. Second, the petitioner must demonstrate prejudice: "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Where the petitioner has pleaded guilty, the appropriate test for prejudice is whether he can show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

ii. Relevant State Court Proceedings

At his PCR hearing, Petitioner testified that he and trial counsel never discussed trial tactics or the possibility of challenging the witnesses identification by filing a motion to suppress. Resp't Ex. 128 at 10. Petitioner testified that, had he been properly advised, he would have proceeded to trial. *Id*. at 11.

The State submitted an affidavit from trial counsel, stating that that Petitioner "wanted to obtain a global settlement," and "wanted to obtain drug and alcohol treatment." Resp't Ex. 127 at 1. Petitioner's goal was to "minimize the amount of prison time across all cases." *Id*. In trial counsel's opinion, filing a motion to suppress "would have prevented a global resolution and likely would have made it more difficult to settle the other cases," and he "believed that the offer from the District Attorney's office was very generous and was a good deal." *Id*. at 2. Had he filed a motion to suppress, trial counsel believed that "the DDA on the case would not have given [Petitioner] as generous of an offer." *Id*.

The PCR court denied Petitioner's ineffective assistance of counsel claim in a written judgment. Resp't Ex. 129. The PCR court found trial counsel's testimony to be credible, and Petitioner's testimony to be not credible as it was "both inconsistent with that of [trial counsel] and with the record." *Id*. at 4. The PCR court made several findings in support of its decision:

> Petitioner did not prove that his trial attorney failed to exercise reasonable professional skill and judgment in failing to adequately advise Petitioner of the possibility of suppressing the witness identification. The goal that petitioner expressed to trial counsel was to minimize the amount of prison time across all cases and to obtain a global settlement for all five criminal cases and two probation revocations that were pending against petitioner and to access drug and alcohol treatment. Trial counsel reasonably believed that filing a motion suppressing the eyewitness identification would have prevented a global resolution, made it more difficult to settle the other cases, and resulted in a less generous offer in case 19CR83473. Therefore, given petitioner's goals and the likely impact a motion to suppress would have, trial counsel could reasonably conclude that the best way to achieve the shortest prison sentence was to exclusively pursue negotiations, and to

> not pursue other avenues that would have been counter to petitioner's stated goal. Therefore, trial counsel advised petitioner consistent with petitioner's goals and that advice was not deficient.
>
> A motion to suppress the eyewitness identifications was also unlikely to be successful, and trial counsel's advice was not deficient. Witnesses were victims of the home invasion robbery and saw the Petitioner over a significant period of time. They then saw the picture on the phone a short time later and spontaneously identified Petitioner as one of the perpetrators. There is no indication of coercion or manipulation on the part of the police. The phone photo also contained the rifle which the witnesses were able to identify. The identification by the witnesses met the baseline of reliability and the admission of the identification would not have been unfairly prejudicial. The state would have been able to satisfy its burden under OEC 602.
>
> In addition, Petitioner has not proven that he would have rejected the plea offer and proceeded to trial if he was aware that he could challenge the reliability of the witness identification. Petitioner's testimony to that effect is not credible. As noted above, it was the Petitioner's goal to resolve all of the cases with the least amount of prison time as possible. Petitioner was facing charges in four other cases and probation revocation in two other cases, in addition to the significant prison time that he faced in this case. The plea agreement and global settlement allowed petitioner to minimize the amount of time he would be sentenced to prison. The offer was described by counsel as very generous and a good deal for petitioner. The plea agreement provided for the dismissal of several charges and an agreement to cap the sentence at 162 months avoiding longer consecutive sentences on the most serious charges.

*Id*. at 4-5.

The Oregon Court of Appeals summarily affirmed the PCR court's judgment finding that Petitioner had not presented a substantial question of law. Resp't Ex. 136. Thus, the PCR court's opinion is the last reasoned decision.

<u>iii.</u> Analysis

"On habeas review, the state court's factual findings are entitled to a presumption of correctness, and may not be overturned unless rebutted by clear and convincing evidence." *Rodriguez v. McDonald*, 872 F.3d 908, 919 (9th Cir. 2017). This presumption of correctness applies to credibility determinations made by the PCR court after an evidentiary hearing. *See*

*Sophanthavong v. Palmateer*, 378 F.3d 859, 868 (9th Cir. 2004). The PCR court found that trial counsel was credible and found that Petitioner was not credible. Resp't Ex. 129 at 4. Petitioner did not file any responsive pleadings and therefore fails to rebut by clear and convincing evidence the presumption of correctness associated with the PCR court's credibility determinations and factual findings.

This Court is also bound by the PCR court's determinations of Oregon state law:

> It is not the province of a federal habeas court to reexamine state-court determinations of state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."). The PCR court found that a motion to suppress was "unlikely to be successful" because "the identification by the witnesses met the baseline of reliability and the admission of the identification would not have been unfairly prejudicial." Resp't Ex. 129 at 5. The PCR court therefore concluded that the State would have been able to satisfy its burden under Oregon's rules of evidence. *Id.* ("The state would have been able to satisfy its burden under OEC 602.").[2] This Court must defer to that ruling. *See Woods v. Sinclair*, 764 F.3d 1109, 1138-39 (9th Cir. 2014) (noting that a federal habeas court must defer to a state court's ruling if it is based on state law); *see also Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) (acknowledging that "[s]tate courts are the ultimate expositors of state law, and [federal habeas courts are] bound by the state's

[2] Oregon Evidence Code Rule 602 provides, in part:

> a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness.

construction" on state law matters). It follows, then, that trial counsel's performance did not fall below an objective standard of reasonableness.

The PCR court also reasonably determined that Petitioner did not establish prejudice. Upon review of the record, Petitioner cannot establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687-88, 694; *Styers v. Schriro*, 547 F.3d 1026, 1030 n. 5 (9th Cir. 2008) ("a petitioner claiming ineffective assistance of counsel for failure to file a particular motion must not only demonstrate a likelihood of prevailing on the motion, but also a reasonable probability that the granting of the motion would have resulted in a more favorable outcome in the entire case."). In the case of a plea agreement, this generally means that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Petitioner must also "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). Here, deciding to go to trial would not have been rational and would not have resulted in a better outcome than Petitioner's global resolution. Accordingly, the PCR court's decision was not objectively unreasonable and habeas relief is denied in its entirety.

/ / /

**CONCLUSION**

For the reasons identified above, the Petition for Writ of Habeas Corpus (ECF No. 1) is denied. The Court declines to issue a Certificate of Appealability on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

10/20/2026
DATE

Amy M. Baggio
United States District Judge